UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE HAND PROMOTIONS, INC.,           §
                                     §
   Plaintiff,                         §
                                     §
v.                                   §   CIVIL ACTION NO. 3:24-CV-2830-B
                                     §
J. WHISKEY'S LLC, et al.,            §
                                     §
   Defendants.                        §

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc. ("Joe Hand")'s Motion for Default Judgment (Doc. 16). For the reasons provided below, the Motion is **GRANTED**. A final judgment will follow.

## I.

## BACKGROUND

This is an anti-piracy case brought under the Federal Communications Act ("FCA"). Joe Hand markets and licenses closed-circuit, pay-per-view prizefighting events to commercial establishments. Doc. 17-2, App. Ex. B ¶ 4. Joe Hand purchased and retained exclusive commercial exhibition rights to the December 5, 2021, "Gervonta Davis vs. Isaac Cruz" boxing match, including all undercard bouts and the main prizefight (the "Program"). *Id.* Joe Hand marketed sub-licensing rights for the Program to various customers, including bars, restaurants, and clubhouses. *Id.* ¶¶ 5, 11. Customers obtained live access to the program through exclusive transmission, accessible only through Joe Hand's authorized television provider or internet platform after obtaining sub-license rights. *Id.* ¶ 11. To prevent unlicensed establishments from exhibiting the Program, the initial

satellite transmission was electronically coded or "scrambled" before being retransmitted to designated cable systems and satellite television companies. *Id.* ¶ 10

J. Whiskey's Sports Bar and Grill ("JWSB"), a sports bar, did not contact or pay Joe Hand for the commercial sublicense necessary to broadcast the Program live in a commercial establishment. *Id.* ¶ 12. Nevertheless, on the night in question, JWSB broadcast the Program on multiple televisions in its bar where its patrons could observe. Doc. 17-5, App. Ex. B-3, 1-2.[1]

On November 9, 2024, Joe Hand filed its Complaint, alleging that JWSB and its owners, Blanca Renovato Castaneda and Julio Garza (referred to collectively as "Defendants"), willfully violated the FCA for commercial gain. Doc. 1, Compl. ¶¶ 20-24. Joe Hand asks for statutory damages under the FCA, costs, attorney's fees, and interest. *Id.* at 9. Joe Hand served JWSB and Castaneda on December 12, 2024. Doc. 7, Proof Service, 1; Doc. 8, Proof Service, 1. Joe Hand served Garza on February 5, 2025. Doc. 12, Proof Service, 1. Each Defendant failed to answer or otherwise respond to the Complaint by the respective deadline. Joe Hand requested an entry of default, which the Clerk of Court entered in March 2025. *See* Doc. 15, Entry Default. Then in April 2025, Joe Hand moved for default judgment. *See generally* Doc. 16, Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, upon motion of the plaintiff, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend. FED. R. CIV. P. 55(a), (b)(2). That being said, "[d]efault judgments are a drastic

---

[1] Except as otherwise noted, citations to page numbers of documents in the Appendix use the page numbers generated by the ECF docketing system.

remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes and citations omitted). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citation omitted). Instead, "default judgment is committed to the discretion of the district court." *Chevron Intell. Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *2 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (Boyle, J.) (citation omitted). First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). "Third, courts determine what form of relief, if any, the plaintiff should receive." *Morelia Mexican*, 126 F. Supp. 3d at 813 (citation omitted).

### III.

### ANALYSIS

The Court concludes that a default judgment is both procedurally warranted and supported by a sufficient factual basis in the Complaint. Accordingly, Joe Hand is entitled to a default judgment

against all Defendants for the alleged FCA violation in the sum-certain amount of $11,250 for statutory and enhanced damages, plus $3,930 in attorney's fees and costs.

A.    *An Entry of Default Judgment Is Procedurally Warranted.*

To determine whether default judgment is procedurally warranted, the Court considers a list of factors set forth by the Fifth Circuit, known as the *Lindsey* factors:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893 (citation omitted).

After applying the six *Lindsey* factors to Joe Hand's Motion, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings, so there are no material facts in dispute. *See id.*; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Joe Hand's] interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) (other citation omitted). Third, given that all Defendants have had at least eleven months to respond to the Complaint and more than nine months to respond to the present Motion, or else explain why they have not done so, the grounds for default are clearly established. *Cf. Ann Best Elite Temporaries, Inc. v. KNR Grp., Inc.*, 216 F.3d 1080 (5th Cir. 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a

"good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Joe Hand seeks only the relief the law provides, and "the Court is aware of no applicable defense." *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.) (citation omitted). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *See Lindsey*, 161 F.3d at 893 (quoting FED. R. CIV. P. 55(c)). Therefore, the Court concludes that default judgment is proper.

B.    *There is a Sufficient Basis for Judgment in the Pleadings.*

Next, the Court must review the pleadings to determine whether Joe Hand can establish a viable claim for relief. *See Nishimatsu Constr.*, 515 F.2d at 1206. Due to their default, Defendants admit all well-pleaded facts in the plaintiff's complaint. *See id.* But a "defendant is not held to admit facts that are not well pleaded or to admit conclusions of law." *Id.*

In conducting this portion of the analysis, "the Fifth Circuit looks to the [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs., LLC*, No. 3:19-CV-2850-B, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (Boyle, J.) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and internal quotation marks omitted). But "the pleading must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Joe Hand alleges that Defendants violated 47 U.S.C. § 605, or alternatively 47 U.S.C. § 553, of the FCA. Doc. 1, Compl. ¶ 23. A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, a person violates § 553 by "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). Said otherwise, § 605 prohibits the unauthorized interception or receipt of satellite communications, while § 553 precludes the same for cable services. *See Joe Hand Promotions, Inc. v. Ambiente Bar LLC*, No. 7:13-CV-132, 2014 WL 580767, at *2 (S.D. Tex. Feb. 13, 2014). "However, the remedies under sections 605 and 553 are mutually exclusive—a party cannot recover for the same action under both provisions." *Joe Hand Promotions, Inc. v. AJC Beverage, LLC*, No. 3:08-CV-1764-P, 2009 WL 10704560, at *1 (N.D. Tex. Mar. 26, 2009) (Solis, J.) (citations omitted).

In the context of a commercial establishment exhibiting an unauthorized sporting event, a plaintiff can establish a violation of *either* statute by showing that (1) the event was shown in the defendant's establishment, (2) the event was shown without authorization, and (3) the plaintiff was the exclusive licensee. *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-3052, 2014 WL 198159, at *3 (W.D. La. Jan. 14, 2014) (citations omitted). Thus, a plaintiff need not show precisely *how* the defendant was able to exhibit the event without authorization—only that it occurred. *See id.*

Moreover, "[b]oth statutes expressly prohibit assisting third parties in intercepting or receiving unauthorized communications," thus allowing plaintiffs to hold related individuals liable

if the individual "had (1) the right and ability to supervise the unauthorized activities of the establishment and (2) an obvious and direct financial interest in those activities." *Ambiente Bar*, 2014 WL 580767, at *2 (citations omitted).

Joe Hand alleges that Defendants showed the Program at the JWSB sports bar. Doc. 1, Compl. ¶¶ 13-16. Defendants did so for commercial purposes—namely to attract patrons to JWSB. *Id.* ¶ 14. Joe Hand further alleges that Defendants lacked authorization to exhibit the Program for commercial use, *id.* ¶ 16, and that Joe Hand had an exclusive license to commercially broadcast the Program, *id.* ¶¶ 3, 8. Lastly, Joe Hand alleges that Castaneda and Garza were the "owners, members, managers, officers, and/or principals of the entity" on the date of the fight. *Id.* ¶¶ 5-6, 17. Castaneda and Garza could "supervise [JWSB's] activities" and "had an obvious and direct financial interest" in JWSB's activities. *Id.* As Defendants failed to respond to the complaint, the Court holds these facts as undisputed. *See Nishimatsu Constr.*, 515 F.2d at 1206.

Because the above undisputed facts establish that Defendants broadcasted the Program at their establishment without authorization and that Joe Hand had an exclusive license to the Program, Joe Hand provides a sufficient basis for judgment on its § 605 and § 553 claims. *See Rivals Sports Grill*, 2014 WL 198159, at *3. Joe Hand also provides a basis for the individual liability of Castaneda and Garza, as the Complaint establishes that they could both supervise the unauthorized broadcast and that they had a direct financial interest in JWSB's activities. *See Ambiente Bar*, 2014 WL 580767, at *2. Nevertheless, because Joe Hand cannot recover under both provisions, the Court

construes its claim as one brought under § 605[2] and finds a sufficient basis for judgment only on that claim.

C.    *The Court Awards $11,250 in Damages Plus Attorney's Fees and Costs.*

Having found sufficient basis for default judgment, the Court must consider any damages to which Joe Hand is entitled. Normally, courts should not award damages without a hearing, unless detailed affidavits establish the necessary facts. *Morelia Mexican*, 126 F. Supp. 3d at 814 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). But a hearing is unnecessary if the court can determine the amount of damages with mathematical calculation, by referencing the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citations omitted). Because Joe Hand's requested statutory damages, enhanced damages, and costs can be determined with certainty, the Court finds that no hearing is required and awards $2,250 in statutory damages, $9,000 in enhanced damages, and $3,930 in attorney's fees and costs for Defendants' violation of § 605. The Court also awards Joe Hand post-judgment interest.

1.    Statutory and Enhanced Damages

A party "aggrieved by" a violation of § 605 may elect to receive either actual damages or statutory damages. *See* § 605(e)(3)(C)(i). Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just.

---

[2] "A majority of courts that have dealt with a violation of both sections of the FCA award damages only under [§] 605." *AJC Beverages*, 2009 WL 10704560, at *1 (citation modified) (collecting cases). "[A] logical reading" of the two sections makes clear that "§ 605 deals with communications traveling through the air (via radio), and § 553 covers communications traveling over cable wire." *G&G Closed Circuit Events, LLC v. Bar Sante Fe LLC*, No. 3:23-CV-370-S, 2024 WL 3237175, at *4 (N.D. Tex. June 6, 2024) (Horan, Mag. J.) (citation omitted), *report and recommendation adopted*, 2024 WL 3240675 (N.D. Tex. June 28, 2024) (Scholer, J.). As either method could have been used here, *see* Doc. 1, Compl. ¶ 11, and because neither statute requires proof of which method Defendants used, *see Rivals Sports Grill*, 2014 WL 198159, at *3, the Court opts to treat this as a violation of § 605 (which the Court deems the more-likely applicable statute).

§ 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, at its discretion, increase the damage awarded by an amount of not more than $100,000 per violation. § 605(e)(3)(C)(ii).

     i.    Statutory Damages

Joe Hand requests statutory, rather than actual, damages, asking for $10,000—the statutory maximum. Doc. 16, Mot. ¶¶ 17-21. Joe Hand argues it is entitled to compensation because, as a result of Defendants' actions, it lost revenue, was denied the "'value, benefits and profits derived' from the unauthorized broadcast of the Program," and lost out on "the value of [the] 'business investment, business opportunities, reputation, and goodwill'" it might have otherwise enjoyed. *Id.* ¶ 27 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).

To support these assertions, Joe Hand presents an affidavit from Joe Hand, Jr. ("Mr. Hand"), who is the President of Joe Hand and "custodian of records." Doc. 17-2, App. Ex. B ¶¶ 1-2. According to Mr. Hand, Joe Hand's customer base is and has been "ero[ded]" by the "rampant piracy of [its] broadcasts by unauthorized and unlicensed establishments." *Id.* ¶ 6. In addition to Joe Hand's "loss of several millions of dollars of revenue," its customers that lawfully broadcast programs also lose business and patrons due to their inability to compete with unauthorized establishments offering the same programming without paying applicable license fees. *Id.* ¶¶ 15-16. In sum, Defendants' actions damaged the goodwill and reputation of Joe Hand and impaired its right and ability to control and receive fees for transmitting its programs.

In assessing statutory damages under § 605, courts consider various factors, including the number of patrons in the establishment at the time of the violation and the licensing

fee. *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-cv-1889-M, 2017 WL 373478, at *3 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.) (citations omitted). Joe Hand's private investigator, who was present at the JWSB bar as it exhibited the Program, took three headcounts of patrons throughout the evening. Doc. 17-5, App. Ex. B-3, 1-2. He first counted fourteen people, then seventeen people, and finally nine people. *See id.* at 2. He also approximated that JWSB's bar had a 99-person capacity. *Id.* at 1. Joe Hand charged a $750 sublicensing fee for commercial establishments with a 76 to 100-person capacity to exhibit the Program. *See* Doc. 17-4, App. Ex. B-2. Thus, JWSB's would-have-been sublicensing fee for the Program was likely $750.

However, "to adequately deter piracy, the cost of piracy must be significantly higher than the cost of buying a license." *2 Tacos Bar*, 2017 WL 373478, at *3 (citation modified) (quoting *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013)). Thus courts "normally treble[ ] the broadcasting fee to account for 'money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight.'" *Joe Hand Promotions, Inc. v. Cuellar*, No. 4:24-CV-00756-O, 2025 WL 361461, at *5 (N.D. Tex. Jan. 15, 2025) (Ray, Mag. J.) (quoting *J&J Sports Prods., Inc. v. Rivera*, No. EP-14-cv-00343-KC, 2015 WL 1137473, at *4 (W.D. Tex. Mar. 12, 2015)), *report and recommendation adopted*, 2025 WL 360911 (N.D. Tex. Jan. 31, 2025) (O'Connor, J.). The unpaid broadcast fee, trebled, would result in $2,250. The Court thus finds it reasonable to award $2,250 in base statutory damages.

    ii.    Enhanced Damages

Joe Hand requests an additional $50,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "Defendants' actions [were] willful and 'for purposes

of direct or indirect commercial advantage or private financial gain.'" Doc. 16, Mot. ¶ 32 (quoting § 605(e)(3)(C)(ii)). Joe Hand argues the violation was willful because Defendants could not have "innocently" accessed the Program broadcast given how complex it is to intercept a transmission. *Id.* ¶ 33. Courts have found this reasoning persuasive, as there are limited means by which a person can access closed-circuit, pay-per-view events and it would be unlikely for an establishment to intercept such broadcasts by chance. *See, e.g., J. & J. Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-CV-02006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (Lindsay, J.); *Ent. by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002).

Further, the record indicates that Defendants exhibited the Program for either direct or indirect commercial gain, as there were approximately nine to seventeen individuals in the bar when the Program was aired. *See* Doc. 17-5, App. Ex. B-3, 1-2. While JWSB apparently did not charge patrons for admission, it presented the Program while serving food and beverages to its customers. *Id.* at 1. Other courts have found a willful, commercial motive on these grounds. *See, e.g., Beck*, 2013 WL 5592333, at *3; *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014). Thus, there is sufficient evidence to establish that Defendants acted willfully and with a commercial motive.

Because Defendants acted willfully, the Court may increase Joe Hands' award of statutory damages up to $100,000. *See* § 605(e)(3)(C)(ii). Courts generally enhance damages by applying a multiplier between three and five times to the amount awarded in statutory damages. *Joe Hand Promotions, Inc. v. Mickey's Sports Bar & Grill, LLC*, No. 3:17-CV-1312-S (BK), 2018 WL 3039256, at *4 (N.D. Tex. May 8, 2018) (Toliver, Mag. J.) (citations omitted), *report and recommendation adopted*, 2018 WL 3038510 (N.D. Tex. June 19, 2018) (Scholer, J.). To determine the multiplier, courts

consider the egregiousness of the conduct. *See id.* Egregiousness depends on factors including whether defendants advertised the event, whether they charged a cover, the number of repeat offenses, and number of patrons. *See, e.g., id.* (applying a 3X multiplier where defendant did not charge cover, did not advertise, was not a repeat offender, and played the event to about 15 patrons); *see also Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (Boyle, J.) (applying a 4X multiplier where defendant charged $5 cover, played the event on nine screens, and had approximately 85-125 patrons); *Beck*, 2013 WL 5592333, at *3 (awarding 3X multiplier where defendant did not impose a cover charge, only 30 patrons viewed the event, and defendant was not a repeat violator).

On the night in question, JWSB exhibited the Program on at least six separate television sets. *See* Doc. 17-5, App. Ex. B-3, 1. Nothing indicates that Defendants charged patrons a cover fee. *See id.* (indicating that no cover charge was required to enter JWSB). However, Defendants did sell drinks and food during the broadcast of the match. *See id.* There were approximately nine to seventeen individuals in the establishment while the Program aired. *See id.* at 2. Further, Joe Hand provides evidence that, on at least six prior occasions, JWSB promoted the broadcast of Joe Hand's proprietary programming on Facebook to attract patrons. *Compare* Doc. 17-2, App. Ex. B. ¶ 13 (listing programs to which Joe Hand had exclusive license), *with* Doc. 17-7, App. Ex. C-1 (JWSB's advertisement for one of Joe Hand's six programs), *and* Doc. 17-8, App. Ex. C-2 (another), *and* Doc. 17-9, App. Ex. C-3 (another), *and* Doc. 17-10, App. Ex. C-4 (another), *and* Doc. 17-11, App. Ex. C-5 (another). Defendants did not lawfully obtain sublicenses from Joe Hand on any of those prior occasions, *see* Doc. 17-2, App. Ex. B. ¶ 13, indicating repeat violations.

Because the Court finds that Defendants, continuing in a pattern of similar violations, willfully exhibited the Program for a commercial motive, the Court applies an enhanced damages award of four times (4X) Joe Hand's statutory damages. The Court therefore awards Joe Hand enhanced damages in the amount of $9,000.

2.  The Court Awards $3,125 in Attorney's Fees and $805 in Costs.

Joe Hand requests $3,125 in attorney's fees and $805 in court costs. Doc. 16, Mot., 18; Doc. 17-13, App. Ex. D (hereinafter cited as "King Decl.") ¶ 6. Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. § 605(e)(3)(B)(iii). "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

To support its request, Joe Hand submits an affidavit stating that its counsel, Jamie King, incurred $3,125 in attorney's fees at a rate of $250 per hour. King Decl. ¶ 6. King also attached a table describing the amount of time spent and the corresponding activity. *Id.* ¶ 5. Courts in this district have awarded King fees at a $250 per hour rate in similar cases. *See, e.g.*, *Joe Hand Promotions, Inc. v. Allure Jazz & Cigars, LLC*, No. 3:22-CV-514-E (BK), 2024 WL 4174913, at *4 (N.D. Tex. Aug. 23, 2024) (Toliver, Mag. J.) (awarding King $250 per hour in an anti-piracy claim), *report and recommendation adopted*, 2024 WL 4181047 (N.D. Tex. Sept. 12, 2024) (Brown, J.). Based on a review of these records, the Court accepts Joe Hand's lodestar calculation as reasonable given the length and nature of the work performed and the specialized experience of Joe Hand's counsel.

Joe Hand also identifies that it has incurred a $405 filing fee and $400 in service costs, which the Court finds are properly supported by evidence. King Decl. ¶ 7; Doc. 17-14, App. Ex. D-1, 1-3.

Accordingly, the Court makes no adjustment to these figures and grants Joe Hand's request for $3,125 in attorney's fees and $805 in court costs.

### 3.  Post-Judgment Interest

Joe Hand also requests post-judgment interest. Doc. 16, Mot., 19. Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest. *See Bos. Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). The federal post-judgment interest rate ("federal rate") is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average 1–year constant maturity Treasury yield for the calendar week preceding the date of judgment. Post-judgment interest is available "on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees." *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). Post-judgment interest accrues from the date of judgment. *See* § 1961(a).

For the calendar week preceding the Court's judgment, the federal rate was 3.53%. Therefore, the Court awards post-judgment interest on the final judgment award, including all damages, attorney's fees, and costs, at a rate of 3.53%, as calculated from the judgment date.

### IV.

### CONCLUSION

For the reasons discussed above, the Court **GRANTS** Joe Hand's Motion for Default Judgment (Doc. 16). The Court:

- **GRANTS** Joe Hand's request for statutory damages in the amount of $2,250 and for enhanced damages in the amount of $9,000, for a total award of $11,250;

• **GRANTS** Joe Hand's request for attorney's fees in the amount of $3,125;

• **GRANTS** Joe Hand's request for costs of court in the amount of $805; and

• **GRANTS** Joe Hand's request for post-judgment interest at the rate of 3.53% on all amounts awarded herein.

A final judgment will follow.

**SO ORDERED.**

**SIGNED: January 28, 2026.**


_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE